**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff(s),**    CASE NUMBER: 05-80025
                HONORABLE VICTORIA A. ROBERTS

v.

**D-1 TIMOTHY DENNIS O'REILLY**,

    **Defendant(s).**
_____/

**ORDER**
(REGARDING DOCUMENT #187 AND #204)

**I. INTRODUCTION**

This matter is before the Court on Defendant Timothy Dennis O'Reilly's Motion to Strike Certain Statutory Aggravators (Doc. #204). Defendants Kevin Watson and Norman Duncan joined in this motion. Also before this Court is Defendant Kevin Watson's Motion to Bar Consideration or Imposition of the Death Penalty on the Grounds that The Death Penalty Procedures Authorized by 18 U.S.C. §3591 et seq. Include Duplicative Aggravating Factors Which Skew The Weighing Process In Violation of Stringer v Black (Doc. #187).

Defendant O'Reilly ("O'Reilly") ask the Court to strike certain preliminary threshold factors and statutory aggravating factors from the Government's Notice of Intent to Seek the Death Penalty ("Notice of Intent"). Additionally, O'Reilly states that certain special findings in the First Superseding Indictment should be stricken.[1] O'Reilly

---

[1]The Government filed a Second Superseding Indictment on October 26, 2005. It contains the same special findings, but adds additional defendants.

1

argues that the alleged factors and findings are duplicitous, vague, prejudicial, and an unconstitutional violation of his Fifth, Sixth, and Eighth Amendments.

Further, Defendant Watson ("Watson") argues that the Federal Death Penalty Act ("FDPA") violates his Eighth Amendment rights because it does not satisfy the "heightened standard of reliability" required when the jury's decision is between life and death.

While O'Reilly mentions a violation of his Fifth and Sixth Amendment rights, he fails to offer any support. The Court finds that O'Reilly abandoned those constitutional claims. Additionally, O'Reilly mentions that certain special findings[2] should be stricken, but does not expand on this argument. The Court assumes O'Reilly's Notice of Intent arguments apply to the special findings. Thus, this ruling applies to both O'Reilly's Notice of Intent and special findings claims. Oral argument was heard on August 21,

---

[2]O'Reilly argues that the following special findings should be stricken:
. . .
(3) As to Counts Two and Three, defendants TIMOTHY DENNIS O'REILLY and KEVIN WATSON intentionally inflicted serious bodily injury that resulted in the death of Norman Anthony Stephens (18 U.S.C. §3591(a)(2)(B)); (4) As to Counts Two and Three, defendants TIMOTHY DENNIS O'REILLY, NORMAN DUNCAN, KEVIN WATSON and ARCHIE BROOM intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Norman Anthony Stephens died as a direct result of the act. (18 U.S.C. §3591(a)(2)(C)); (5) As to Counts Two and Three, defendants TIMOTHY DENNIS O'REILLY, NORMAN DUNCAN, KEVIN WATSON and ARCHIE BROOM intentionally and specifically engaged in one or more acts of violence, knowing that the act or acts created a grave risk of death to a person, other than one of the participants in the offense, such that participation in such act or acts constituted a reckless disregard for human life, and Norman Anthony Stephens died as a direct result of such act or acts (18 U.S.C. §3591(a)(2)(D)).

2007.

O'Reilly and Watson's motions are **DENIED.**

**II.    OVERVIEW OF THE DEATH PENALTY STATUTES**

A jury must follow certain procedural requirements before it can impose the death penalty under 18 U.S.C. §3591. The jury must first determine whether one of the preliminary threshold factors enumerated in 18 U.S.C. §3591(a) is present. If the jury does not unanimously find beyond a reasonable doubt that at least one of these preliminary threshold "intent" factors has been proven, the death penalty cannot be imposed. If the jury finds one or more of the requisite intent factors, it must then consider the statutory aggravating factors alleged by the Government in its Notice of Intent. At this stage, the jury must determine whether the Government proved at least one of the statutory aggravating factors outlined in 18 U.S.C. §3592 beyond a reasonable doubt. 18 U.S.C. §3593(c). If the jury finds the Government has not met its burden, the death penalty cannot be imposed. 18 U.S.C. §3593(d).

If the jury finds the requisite statutory aggravating factor(s) was proven beyond a reasonable doubt, it must then weigh that factor or factors, and any non-statutory aggravating factors, against mitigating factors to determine whether the death penalty is appropriate. 18 U.S.C. §3593(e). The non-statutory aggravating factors are different from the preliminary threshold factors and the statutory aggravating factors. They include such things as the effect of the offense on the victim and the victim's family. 18 U.S.C. §3593(a). They must be enumerated in the Notice of Intent. Here, the Notice of Intent as to O'Reilly provides the following non-statutory aggravating factors:

3

> 1. Defendant shot Norman Stephens from behind, and while Stevens [sic] was already wounded and on the ground.
> 2. Additional violent behavior: Defendant committed the June 19, 2003 Comerica bank robbery wherein he opened fire without warning on Guard Jonathan Smith with an SKS rifle. Defendant also committed other armored car robberies and several home invasion robberies of drug dealers with co-defendant Norman Duncan.
> 3. Future Dangerousness: Defendant stated that he planned to commit additional robberies when he is released from prison. Defendant stated that he intends to kill the witnesses who testified against co-defendant Norman Duncan when released from prison. Defendant also stated that he would have killed co-defendant Earl Johnson after the Dearborn Credit Union robbery if he would have known how Johnson would handle his share of the proceeds.
> 4. Lack of remorse: Defendant's taped conversation evidences his complete lack of remorse for his killing of Stephens and includes defendant's statement that he will kill again.
> 5. The substantial and significant effect of the offense on the victim's family will be established through oral testimony and victim impact statements.

In sum, before the Government may ask a jury to impose a death sentence, it must first prove beyond a reasonable doubt that the defendant is guilty of the crime for which the death penalty is authorized. Second, the Government must prove beyond a reasonable doubt that the defendant acted with one of the four mental states (preliminary threshold factors) provided in the statute. 18 U.S.C. §3591(a)(2). Third, the Government must prove beyond a reasonable doubt the existence of at least one statutory aggravating factor. "If the Government does not carry its burden as to any of these hurdles, the jury may not consider a sentence of death. If the Government does carry its burden as to all three hurdles, the jury may, but need not, impose a sentence of death." *United States v. Kee*, 2000 WL 863119, at *2 (S.D.N.Y. June 27, 2000).

## III. ARGUMENTS AND ANALYSIS

### A. Preliminary Threshold Factors

Before the death penalty can be imposed, a jury must unanimously find beyond a reasonable doubt that one or more of the preliminary threshold factors has been proven. O'Reilly concedes that the preliminary threshold factor, "Defendant intentionally killed the victim," 18 U.S.C. §3591(a)(2)(A), exists under the Government's theory of prosecution. O'Reilly asks the Court to strike the other three factors from the Notice of Intent because they are redundant, duplicative, and unnecessary.

They are that:

(2) Defendant intentionally inflicted serious bodily injury that resulted in the death of the victim. 18 U.S.C. §3591(a)(2)(B); (3) Defendant intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act. 18 U.S.C. §3591(a)(2)(C); and (4) Defendant intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants of the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act. 18 U.S.C. §3591(a)(2)(D).

O'Reilly argues that the Government expands the "intent to kill" factor into four separate aggravating circumstances. According to O'Reilly, "[t]his improperly places the prosecution's thumb on the scales in favor of a death sentence." *See Stringer v. Black*, 503 U.S. 222, 231-32 (1992).

In addition, Watson argues that these preliminary threshold factors are

aggravating factors that do not narrow the cases for which the death penalty should be imposed. Instead, according to Watson, they merely duplicate elements of the offense.

The four intent elements under the Anti-Drug Abuse Act of 1988 ("ADAA") provide the defendant:

> (A) intentionally killed the victim; (B) intentionally inflicted serious bodily injury which resulted in the death of the victim; (C) intentionally engaged in conduct intending that the victim be killed or that lethal force be employed against the victim, which resulted in the death of the victim; (D) intentionally engaged in conduct which (i) the defendant knew would create a grave risk of death to a person, other than one of the participants in the offense; and (ii) resulted in the death of the victim.

21 U.S.C. §848(n)(1).

While similar to the preliminary threshold factors in the FDPA, they are considered aggravating factors the jury weighs against the mitigating factors. *United States v. Cooper*, 91 F.Supp.2d 90, 109 (D.D.C. 2000).

The preliminary threshold factors under the FDPA are not aggravating factors that the jury weighs in making a sentencing recommendation. If the jury finds one or all four of the preliminary threshold factors, it starts with a clean slate and is to evaluate aggravating factors separately. *Id.* at 110. In *United States v. Webster*, 162 F.3d 308 (5th Cir. 1998), the court states, "[Section] 3591(a) does not set forth aggravating factors, but rather serves as a preliminary qualification threshold. The fact that a defendant could satisfy more than one of these via the same course of action does not, therefore, constitute impermissible double counting." *Id.* at 355. Accordingly, this Court

finds that even if one preliminary threshold factor "necessarily subsumes" another, this does not lead to an unconstitutional duplication of aggravating factors, or a skewed weighing in favor of the death penalty. *See United States v. Cheever*, 423 F.Supp.2d 1181, 1200 (D. Kan. 2006).

**B. Statutory Aggravating Factors**

The statutory aggravating factors in the Notice of Intent are:

(1) Defendant, in the commission of the offense, knowingly created a grave risk of death to one or more persons in addition to the victim of the offense. 18 U.S.C. §3592(c)(5); and (2) Defendant committed the offense as consideration for the receipt, or in expectation of the receipt, of a thing of pecuniary value. 18 U.S.C. §3592(c)(8).

O'Reilly argues that this Court should dismiss both of the statutory aggravating factors because they do not accomplish the requisite constitutional narrowing task.

The purpose of statutory aggravating factors is to narrow the universe of murderers eligible for the death penalty and channel the sentencer's discretion in determining whether to recommend a death sentence. *See Lowenfield v. Phelps*, 484 U.S. 231, 244 (1988). The narrowing function may be accomplished in either of two ways: "[(1)] the legislature may itself narrow the definition of capital offenses . . . so that the jury finding of guilt responds to this concern, or [(2)] the legislature may more broadly define capital offenses and provide for narrowing by jury findings of aggravating circumstances at the penalty phase." *Id.* at 246.

The Supreme Court holds that the FDPA accomplishes this constitutionally-mandated narrowing task by requiring the jury to find beyond a reasonable doubt the

existence of at least one statutory aggravating factor. *See Zant v. Stephens*, 462 U.S. 862, 878 (1983). The FDPA does constitutionally narrow the class of persons eligible for the death penalty. It distinguishes between those homicides that warrant the death penalty and those that do not. *See United States v. Le*, 327 F.Supp.2d 601, 609 (E.D. Va. 2004) (citing *United States v. Llera Plaza*, 179 F.Supp.2d 444, 451-52 (E.D. Pa. 2001); *United States v. Minerd*, 176 F.Supp.2d 424, 441 (W.D. Pa. 2001)).

O'Reilly contends that the aggravating factors must be dismissed as vague or overbroad. Whether a factor is vague is determined by assessing whether its definition provides adequate direction to the sentencer. *United States v. Johnson*, 136 F.Supp.2d 553, 558 (W.D. Va. 2001); *see also United States v. McCullah*, 76 F.3d 1087, 1110 (10th Cir. 1996) ("[a]n aggravating factor may be unconstitutionally vague if it 'leaves the sentencer without sufficient guidance for determining the presence or absence of the factor.'") (quoting *Espinosa v. Florida*, 505 U.S. 1079, 1081 (1992)). Aggravating factors must "channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.'" *Lewis v. Jeffers*, 497 U.S. 764, 774 (1990) (quoting *Godfrey v. Georgia*, 446 U.S. 420, 428 (1980)).

"Mathematical precision" is not possible in defining aggravating factors so a vagueness review should be "quite deferential." *See Tuilaepa v. California*, 512 U.S. 967, 973 (1994).

### 1. Grave Risk of Death Factor

O'Reilly argues that the first statutory aggravating factor listed in the Notice of Intent must be stricken as vague because "the prosecution does not identify in what

8

manner there was a 'grave risk of death' or to which particular persons Mr. O'Reilly knowingly created such risk."

The United States Supreme Court has concluded that a similar aggravating circumstance--that a defendant created a "great risk of death" to additional persons--is not void for vagueness.  *Proffitt v. Florida*, 428 U.S. 242, 256 (1976); *see also Brecheen v. Reynolds*, 41 F.3d 1343, 1360-61 (10th Cir. 1994).  Vagueness is evaluated on the words used to define the aggravator and on the construction given by the courts.  *See Brecheen*, 41 F.3d at 1361.  The construction of an aggravating factor is reflected largely by the jury instructions relating to that factor.  *See United States v. Barnette*, 211 F.3d 803, 819 (4th Cir. 2000).  This Court concludes that the parties and the Court can draft jury instructions that will adequately define "grave risk" for the sentencer.  *See Cheever*, 423 F.Supp.2d at 1202-03.

In addition, this Court rejects O'Reilly's argument that the Government failed to identify which particular persons were in jeopardy of such a grave risk of death.  In *United States v. McVeigh*, 944 F.Supp. 1478 (D. Colo. 1996), the court stated the same aggravating factor was appropriate because the factual allegations in the indictment show the Government "intends to prove that the truck bomb was of such force as to create a risk to persons who were not physically affected by the explosion."  *McVeigh*, 944 F.Supp. at 1490.  In addition, *United States v. Le* provides that because the Government alleged that the shooting was committed in the presence of a large crowd in a public place, the defendant's acts plainly created the risk that more than a single victim was in danger of death.  *Le*, 327 F.Supp. at 613.  The defendant in *United States v. Cheever*, 423 F.Supp.2d 1181 (D. Kan. 2006), argued that the Government failed to

9

identify the additional persons subject to this aggravating factor.  The court found that the Government alleged two other people who were in grave risk of death: they were in or near the vicinity when shots were fired, and the bullets' trajectories were sufficiently close to place them at risk of being hit.  *Id.* at 1203.

Here, the Government states it expects to prove the following: (1) O'Reilly, Watson, and Duncan confronted three armed guards--two of whom were outside their armored truck--with loaded 12-gauge shotguns; (2) there were 6-8 shotgun blasts from at least two shotguns; and (3) Guard Norman Stephens was shot by two shotgun blasts.  Only two bullets struck the victim, which placed the other guard in danger of being hit by 4-6 bullets.  Because the Government intends to prove that the shooting occurred in the presence of a guard who was outside the truck with the victim, who could have been struck by one or more shotgun blasts, the Court finds the aggravating factor is not impermissibly vague.

O'Reilly also asserts that this factor is duplicative of the preliminary threshold factor, 18 U.S.C. §3591(a)(2)(D), "[defendant] intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense. . . ."  Although O'Reilly correctly points out that the statutory aggravating factor and the preliminary threshold factor overlap because both require a "grave risk of death," this coincidence is unimportant.  The intent factor is a threshold finding that is not weighed during the penalty phase, so there is no opportunity for it to skew the result.  Thus, the Court rejects this argument.

### 2. Pecuniary Gain Factor

Section 3592(c)(8) contains two separate prongs.  *United States v. Wicklund*,

10

114 F.3d 151, 154 (10th Cir. 1997). The first prong covers killings committed "as consideration for the receipt" of anything of pecuniary value. This is limited to murder for hire situations, *Id.*, and the Government concedes that the evidence will not support this prong. The second prong, "in expectation of the receipt," means "something other than murder for hire." *United States v. Cooper*, 91 F.Supp.2d 90, 105 (D.D.C. 2000). To satisfy this prong, the Government must show that "the murder itself, and not an underlying robbery [was] committed in expectation of something of pecuniary value." *United States v. Brown*, 441 F.3d 1330, 1370 (11th Cir. 2006) (citing *United States v. Barnette*, 390 F.3d 775, 807-08 (4th Cir. 2004).

Citing *United States v. Allen*, 357 F.3d 754 (8th Cir. 2004); *United States v. Bernard*, 299 F.3d 467 (5th Cir. 2002); *United States v. Chanthadara*, 230 F.3d 1237 (10th Cir. 2000); and *United States v. Wilson*, 2007 WL 81935 (E.D.N.Y. Jan. 9, 2007), O'Reilly argues that application of the "pecuniary gain" factor is limited to situations where the murder itself was committed for money. O'Reilly contends that because the shooting appears to be completely incidental to and separate from the robbery, the evidence does not support this factor.

In *Chanthadara*, the defendant was convicted of robbery and using a firearm in a crime of violence under circumstances constituting first-degree murder. The district judge instructed the jury that it had to find that "the offense" was committed in the expectation of receiving something of pecuniary value, but did not clarify whether the offense was robbery or murder. The Tenth Circuit stated that the murder, and not the robbery, had to be committed with the expectation of receiving something of pecuniary value. *Chanthadara*, 230 F.3d at 1264 (holding that "[t]he instruction failed to specify

11

the 'offense' to which it referred was the homicide, not the underlying robbery, and thereby failed to impose a necessary limitation. Therefore, the instruction was erroneous.").

In *Bernard*, it was alleged that the defendants carjacked a young couple, took their ATM cards, demanded pin numbers, and forced the victims into the trunk of their own car. The defendants withdrew money from the victims' accounts and then drove around for several hours with the victims still in the trunk. Eventually, the defendants shot and burned both victims, stating they had to kill the couple because they saw the attackers' faces. The jury imposed the death sentence, finding that the pecuniary gain aggravating factor applied. *Bernard*, 299 F.3d at 471-73. On appeal, the Fifth Circuit disagreed. It found that the defendants did not fit into either of the two prongs. It was not a murder for hire situation nor did the defendants commit the murder in expectation of pecuniary gain. Rather, the sole reason for the murder was to prevent the victims from reporting the crime to the police. Accordingly, the court found the evidence legally insufficient to support the "pecuniary gain" aggravating factor. *Id.* at 483-84.

Neither *Chanthadara* nor *Bernard* supports the argument that the pecuniary gain factor is inapplicable to this case. Rather, they stand for the proposition that the murder itself, and not the underlying robbery, must be committed in expectation of something of pecuniary value. *United States v. Brown*, 441 F.3d 1330, 1370 (11th Cir. 2006); *see also United States v. Barnette*, 390 F.3d 775, 807-08 (4th Cir. 2004) (finding that the district court's instructions properly limited the pecuniary gain factor to the murder, and that the evidence supported the jury's finding that the murder itself was committed with the expectation of receiving pecuniary gain); *United States v. Roman*, 371 F.Supp.2d

36, 46 (rejecting the defendants' motion to strike the pecuniary gain aggravating factor because it could reasonably be inferred that the murder and robbery were one transaction since the murder occurred before the money was obtained and facilitated the pecuniary gain).

Similarly, the courts in *Wilson* and *Allen* held that the "offense" that must be motivated by pecuniary gain is the murder, not the underlying robbery. *See Allen*, 357 F.3d at 750-51; *Wilson*, 2007 WL 81935 at *11.

Here, the Government intends to prove that the guard was killed before O'Reilly and his co-defendants obtained any money. Therefore, the Court finds that a jury could reasonably determine that the murder was motivated by pecuniary gain and was committed to complete the underlying robbery.

Without providing any reasoning, O'Reilly argues that the "pecuniary gain" aggravating factor is vague and overbroad. However, courts hold that "The language [of the pecuniary gain factor] is of such common understanding and practice that an ordinary juror would not have to speculate as to its meaning." *Collins v. Lockhart*, 707 F.2d 341, 346 (8th Cir. 1983).

In arguing that his Eighth Amendment right was violated, O'Reilly contends that the "pecuniary gain" factor is automatically present in any killing that takes place during a robbery. According to O'Reilly, repeating an element of a crime causes the death penalty to be imposed in an arbitrary and capricious manner. However, in *Lowenfield*, the Supreme Court held that imposing the death penalty for first-degree murder did not violate the Eighth Amendment even though an aggravating circumstance duplicated an

element of the underlying offense. *Lowenfield,* 484 U.S. at 241-46.[3]  The Court rejects

O'Reilly's argument.

**IV. CONCLUSION**

The Court **DENIES** O'Reilly and Watson's Motions.

**IT IS ORDERED.**

                                                s/Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated: August 23, 2007

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 23, 2007.

s/Carol Pinegar
Deputy Clerk

---

[3] *Collins v. Lockhart*, 754 F.2d 258 (8th Cir. 1985) held that imposing the death penalty on the basis of pecuniary gain, which duplicated an element of the underlying robbery offense, was unconstitutional. *Perry v. Lockhart*, 871 F.2d 1384 (8th Cir. 1989) held that *Collins* was overruled by *Lowenfield v. Phelps*, 484 U.S. 231 (1988).