UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

            Plaintiff,

Civil Action No.
05-CR-80025

vs.

HON. BERNARD A. FRIEDMAN

D-1 TIMOTHY DENNIS O'REILLY
D-2 NORMAN DUNCAN
D-3 KEVIN WATSON
D-4 ARCHIE BROOM,

HON. VICTORIA A. ROBERTS

            Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANT
WATSON'S POST-HEARING MOTION FOR ACCESS
TO AND PRODUCTION OF MATERIAL EVIDENCE**

      This matter is presently before the Court on Defendant Kevin Watson's "Post-Hearing Motion for Access to and Production of Material Evidence" [docket entry 355]. In accordance with E.D. Mich. Admin. Order No. 00-AO-060, motions for disclosure of juror information are to be decided by the Chief Judge of the Eastern District of Michigan. Pursuant to E.D. Mich. LR 7.1(e), the Court will decide this matter without oral argument. For the reasons that follow, the Court will deny Defendant Watson's motion.

I.    *Defendant Watson's Previous Requests for Access to Jury Selection Records*

      In his first of several motions for access to juror information, Defendant Watson requested that the Court allow him an "unqualified right" to

> inspect, and copy if necessary, records of the Clerk of the Court regarding the
> jury selection process, including but not limited to the following:

> (a) all information, materials, reports and data compilations concerning the selection and summoning process;
>
> (b) the total number of persons in the source or sources and the actual copy or copies of the source list or lists from which the initial selections were made;
>
> (c) the total number of persons at each subsequent step and the actual forms or materials used in those steps;
>
> (d) the completed questionnaires of all persons qualified for service;
>
> (e) the completed questionnaires of all persons disqualified, excused, or exempted, and any other
> materials or information concerning these determinations (including requests for excusal and exemption and orders or notations concerning excusals, exemptions, and disqualifications);
>
> (f) all records related to the summoning of jurors for grand jury or petit jury service, including all
> records or documents relating to the excusal or disqualification of any potential grand or petit juror summoned; and
>
> (g) all surveys regarding the composition of the master or qualified jury panel (typically compiled on Form JS-12).

(Docket entry 178, pp. 3-4.) In its Opinion and Order dated January 10, 2008, the Court determined that the information necessary for Defendant Watson to decide whether to file a motion pursuant to the Jury Selection and Service Act was available through a combination of an inspection of the records that are publicly maintained by the Court clerk, pursuant to 28 U.S.C. § 1868, and an inspection of juror questionnaire information regarding juror number, race and Hispanic ethnicity in the current qualified wheel, as provided for in Administrative Order No. 00-AO-060. *See* Jan. 10, 2008, Op. & Or. at 8. In so determining, the Court made several important observations regarding Defendant Watson's request:

- "the scope of Defendant's request is very broad. In addition . . . the burden of [Defendant Watson's] request will fall . . . on the Court and

> its Jury Department."
>
> • "A number of the items that Defendant seeks will entail a heavy burden in terms of time and cost."
>
> • "[I]f [the Court] allows Defendant to obtain [the information requested] then it is certain that defendants in the future will seek the same or similar information, which will cause a tremendous administrative burden."
>
> • "Defendant can obtain the information that he needs to challenge the Court's jury selection procedure from publicly available sources."

*Id*. at 2-3, 7.

Shortly after the Court issued its January 10, 2008, Opinion and Order, Defendant Watson filed a "Motion for Clarification and/or Reconsideration." In that motion, Defendant sought modification of the Court's Opinion and Order to extend access to demographic data concerning the master as well as the qualified jury wheels. Defendant also sought access to "any and all statistical demographic surveys, summaries or reports, such as the Report on Operation of Jury Selection Plan (Form JS-12), regarding both the current master and qualified wheels." The Court, in its February 4, 2008, Opinion and Order, found Defendant Watson's first request appropriate and permitted access to the current master and qualified jury wheels. *See* Feb. 4, 2008, Op. & Or. at 3. Regarding the second request, the Court declined to grant a request seeking "any and all" reports, surveys and/or summaries and limited access with respect to previous wheels "to those materials that are publicly available pursuant to 28 U.S.C. § 1868." *Id.* at 4.

On April 2, 2008, Defendant Watson filed another motion entitled "Motion to Dismiss Indictment and to Stay Proceedings and for Additional Access to Jury Selection Records." The Court, on April 10, 2008, issued an Opinion and Order in which it construed Defendant Watson's request for additional access to jury selection records as "a second motion for

reconsideration of the Court's January 10, 2008, Opinion and Order . . ." and declined to expand the scope of its two previous opinions and orders. *See* April 10, 2008, Op. & Or. at 1, 4.

II. *Defendant Watson's Present Request for Access to Jury Selection Records*

Currently before the Court is Defendant Watson's fourth motion for juror information and records. The present motion is entitled "Post-Hearing Motion for Access to and Production of Material Evidence."[1] In his present motion, Defendant Watson seeks access to the jury department's electronic files as follows:

> Defendant respectfully requests that the Court allow the Defendant's experts access to the computer files for the Master Jury Wheels from 2000 through the present, the programs or other procedures used in compiling and merging the source lists to create the Master Jury Wheels and the computer files maintained by the Clerk's office regarding the Qualified Jury Wheels from which the grand jury was selected in this case, as well as the Qualified Jury Wheels for 2000 through 2002 and 2004 through 2006.

(Def. Watson's Mot. at 13.) Thus, Defendant Watson makes four requests: (1) access to the computer files for the Master Jury Wheels from 2000 through the present, (2) access to the programs or other procedures used in compiling and merging the source lists to create the Master Jury Wheels, (3) access to the computer files maintained by the Clerk's office regarding the Qualified Jury Wheels from which the grand jury was selected in this case, and (4) access to the Qualified Jury Wheels for 2000 through 2002 and 2004 through 2006.

The Court will deny Defendant Watson's motion for four reasons.[2] First, the Court has already ruled on this issue–more than once. In fact, in its January 10, 2008, Opinion and Order,

---

[1] The government has not filed a response to Defendant Watson's present motion.

[2] The Court believes that each of the four reasons, alone, constitutes an independent basis compelling the denial of the present motion.

4

the Court determined that "Defendant can obtain the information that he needs to challenge the Court's jury selection procedure from publicly available sources" and that "[t]hrough an examination of publicly available records and current information regarding juror number, race and Hispanic ethnicity, Defendant will be able to determine whether to pursue a motion that requires such a showing." Jan. 10, 2008, Op. & Or. at 7, 8. The Court reiterated this finding in its April 10, 2008, Opinion and Order at page 3. As stated on previous occasions, Defendant Watson has already been afforded access to all information and records to which he is constitutionally and statutorily entitled.

Secondly, the Court will deny Defendant Watson's motion because much of the information and data sought in the present motion is already available for inspection by Defendant Watson, albeit not electronically.[3] The Court has previously held in this matter that "[t]he form of access to . . . materials is to be determined by the Court Clerk, in accordance with whichever method the Court Clerk uses to maintain such data." Feb. 4, 2008, Op. & Or. at 4. The Court declines to order that the information and data requested be produced in any particular format.

---

[3] Records from 2000 through 2002 are unavailable because they have been disposed of pursuant to the applicable record management policies governing juror selection records. *See* 28 U.S.C. § 1868 ("all records and papers compiled and maintained by the jury commission or clerk before the master wheel was emptied shall be preserved in the custody of the clerk for four years . . ."); Records Management Guide, Vol. 1, Ch. 12, Part A, § 15(B)(2) ("[a]ll records and papers compiled and maintained by the jury commission or clerk" are disposed of "4 years after the master jury wheel has been emptied and refilled and all persons selected have completed jury service . . .").

Otherwise, of the four requests for access made by Defendant Watson in the present motion, the only information and/or data to which Defendant Watson does not currently have access—in one form or another—is the information and/or data reflected in Defendant Watson's second request. However, Defendant Watson's second request is improperly directed to the Court and its Clerk's Office inasmuch as the programs and procedures used in compiling and merging the source lists to create the master wheels are not maintained by the Court.

Thirdly, the Court finds the present motion to be an unprecedented and highly invasive request that, if allowed, would be extraordinarily burdensome on this Court and its jury department. Moreover, the Court notes—as it did in its January 10, 2008, Opinion and Order—that if it allows this Defendant the access he seeks, "it is certain that defendants in the future will seek the same or similar information, which will cause a tremendous administrative burden." Jan. 10, 2008, Op. & Or. at 3. For that reason, allowing the public to access this Court's computer files is as infeasible as it is unprecedented.

Finally, Defendant Watson has not supported his present request with "good cause" as he must under E.D. Mich. Admin. Order No. 00-AO-060. As stated by the United States Supreme Court,

> [i]n order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Mo.*, 439 U.S. 357, 364 (1979). Defendant Watson states in his brief that he believes four factors may be depressing the representation of African-American and Hispanic/Latino-American communities in this district and requests access to the information and records enumerated above to determine whether any of those factors constitutes a systematic factor depressing minority representation. The four purported systematic factors, as articulated by Defendant Watson, are as follows:

> (1) "[T]he Master Jury Wheel is balanced based upon voter registration, when the Master Jury Wheel is composed of names not merely from the Voter Registration List, but from the Driver's License List and the Personal Identification Card List." (Def. Watson's Mot. at 4.)

6

(2) "The merging of the three lists [from which juror names are obtained] may be being handled in a fashion that diminishes African-American and Hispanic/Latino-American representation." (*Id*. at 9.)

(3) "The failure of the Clerk's office to do anything more than send a follow up letter by U.S. Mail first class alone to those failing to return qualification questionnaire may have a disparate impact on African-American and Hispanic/Latino-American representation" since "African-American and Hispanic/Latino-American communities tend to be younger, more transient and more often renters" and "there may be a disproportionate number of 'bad' or 'stale' addresses in the Master Jury Wheel for African-Americans and Hispanic/Latino-Americans." (*Id*. at 9.)

(4) "Potential African-American and Hispanic/Latino-American jurors are being excused, disqualified or exempted . . . at a greater rate than non-African-American and non-Hispanic/Latino-American jurors." (*Id*. at 9-10.)

Insofar as Defendant Watson seeks the information and data requested herein in order to prove that the first and third factors constitute systematic factors under *Duren* and its progeny, the Court finds that Defendant Watson has failed to support his request with good cause in accordance with E.D. Mich. Admin. Order No. 00-AO-060 because neither factor, even if proven, could potentially constitute a systematic exclusion under prevailing law. First, with regard to the first factor Defendant Watson believes to constitute systematic exclusion under *Duren*, even if Defendant Watson's theory is proven, his fair-cross-section claim would nevertheless fail. Defendant Watson explains his theory as follows:

> Although the Plan now required obtaining jurors not simply from the Voter Registration List, but also from the Driver's License and Personal Identification Cards Lists, lists from which you would expect to obtain jurors not included on the Voter Registration List, Section (h)(2) of the Plan, nevertheless, instructed the Clerk's Office to balance the Master Jury Wheel based upon "the number of registered voters in each county in each division." As a consequence, although a Master Jury Wheel randomly selected from the three source lists . . . properly merged by deleting duplicates . . . should give you a list of potential jurors which more accurately reflects a fair cross-section of the community, that result is compromised when you balance the Master Jury Wheel based upon voter registration in each county and not

7

> based upon the total representation for each county alone and not based upon the total representation for each county from all three source lists . . . . What you gain with one hand you take away with the other.

(Def. Watson's Mot. at 8.) The Court rejects this factor as one that could constitute systematic exclusion under *Duren*. Even assuming for the sake of argument that Defendant Watson is correct that the diversity gained from using driver's license and identification lists in addition to voter registration lists is somehow negated by the operation of the Court's Jury Selection Plan, any fair-cross-section claim would still fail. As noted by the Tenth Circuit and quoted with approval by the United States Supreme Court in *United States v. Test*, 550 F.2d 577, 586 n.8 (1976),

> the circuits are in complete agreement that not only is the use of actual voter lists proper, but that neither the [JSSA] nor the Constitution require that a supplemental source of names be added to voter lists simply because an identifiable group votes in a proportion lower than the rest of the population.

*United States v. Evans*, 542 F.2d 805, 812 (10th Cir. 1976) (citing cases). *See also* 33 Fed. Proc., L. Ed. § 77:170 (2008) (collecting cases supporting the general proposition that "the use of voter registration lists as the sole source of prospective jurors violates neither the Jury Selection and Service Act of 1968 nor the Constitution"). Therefore, "[w]hat you gain" by obtaining jurors from driver's license and personal identification card lists in addition to voter registration lists *can* be taken away where, as here, what has been gained clearly exceeds that which is constitutionally and statutorily mandated.

Nor can Defendant Watson's third factor serve as a systematic factor under *Duren*. The case law overwhelmingly suggests that no fair-cross-section claim would exist even if Defendant Watson could prove that African-Americans and Hispanic/Latino-Americans are underrepresented due to the failure of the Clerk's Office to employ more stringent follow-up procedures. *See, e.g.,United States v. Orange*, 447 F.3d 792, 799-800 (10th Cir. 2006) (rejecting

the failure of the clerk's office to take further follow-up action with respect to returned or undeliverable questionnaires as the basis for a fair-cross-section claim, noting that "[d]iscrepancies resulting from the private choices of potential jurors do not represent the kind of constitutional infirmity contemplated by *Duren*"); *United States v. Rioux*, 97 F.3d 648, 658 (2d Cir. 1996) ("[t]here is systematic exclusion when the underrepresentation is due to the system of jury selection itself, rather than external forces. The inability to serve juror questionnaires because they were returned as undeliverable is not due to the system itself, but to outside forces, such as demographic changes"). In light of these cases and others unequivocally demonstrating that factor (3), even if shown, cannot form the basis for a fair-cross-section claim, access to the files requested by Defendant Watson—to the extent they would be used to support the argument that external forces can constitute systematic exclusion under *Duren*—would be futile.

IV. *Conclusion*

For all these reasons,

IT IS ORDERED that Defendant Watson's "Post-Hearing Motion for Access to and Production of Material Evidence" [docket entry 355] is denied.

                                                S/Bernard A. Friedman
Dated: November 20, 2008                        BERNARD A. FRIEDMAN
        Detroit, Michigan                      CHIEF UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document
was served upon counsel of record by electronic and/or first-class mail.

S/Carol Mullins
Case Manager to Chief Judge Friedman